UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIRESTONE DIVERSIFIED PRODUCTS.
LLC, f/k/a BFS DIVERSIFIED PRODUCTS,
LLC, and FIRESTONE INDUSTRIAL
PRODUCTS COMPANY, LLC,

     Case Number: 11-12084
     HON. MARIANNE O. BATTANI

    Plaintiffs,

v.

SU-TEC, INC., d/b/a ALPHA ENGINEERED
REFRIGERATION COMPANY, a dissolved
Michigan corporation and AERCO, LLC,
Michigan limited liability company, jointly
and severally,

    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

  Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. No. 16). Plaintiffs Firestone Diversified Products, LLC and Firestone Industrial Products Company maintain they are entitled to judgment as a matter of law because Defendant Su-Tec, Inc.'s ("Su-Tec") transfer of assets to Defendant Aerco LLC ("Aerco") was fraudulent under the Uniform Fraudulent Transfer Act, Mich. Comp. Laws § 566.31 et seq. The court heard oral argument on February 2, 2012, and at the conclusion of the

hearing took this matter under advisement.[1]  For the reasons that follow, Plaintiffs' motion is **GRANTED**.

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

In December 2009, Plaintiffs obtained a judgment against Defendant Su-Tech, Inc. ("Su-Tec") in prior litigation before this Court.  (See Case No. 09-10992).  Su-Tec paid nothing towards the judgment and transferred its assets to Defendant Aerco on January 5, 2010, pursuant to a written purchase agreement.  (Doc. No. 16, Ex. B).  Su-Tec subsequently dissolved.  (Doc. No. 16, Ex. D).

The two Defendants have many things in common.  Su-Tec manufactured industrial refrigeration equipment/process cooling machines used to cool down manufacturing machines that build automobile parts.  Aerco is in the alternative energy business and manufactures industrial process cooling equipment unrelated to the automotive market.  Aerco operates its business in the same location that Su-Tech used.  (Doc. No. 15, Ex. F at 32).  Aerco has some of the same customers and vendors; the same telephone number and website previously used by Su-Tec, and its phone is answered with the same greeting used by Su-Tec.  (Doc. No. 16, Ex. F at 34, 72). The law firm that incorporated Aerco represented Su-Tech in the previous litigation.  (Doc. No. 16, Ex. G).

---

[1] During oral argument, Defendants suggested that subject matter jurisdiction might be lacking.  The Court subsequently ordered Plaintiffs to show cause why this case should not be dismissed for lack of subject matter jurisdiction. The Court has reviewed Plaintiffs' responses and is satisfied that subject matter jurisdiction may be exercised pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeded $75,000 on the time the complaint was filed, and Plaintiffs were not citizens of Michigan whereas Defendants were.  See e.g. Shields v. Bridgestone Firestone North American Tires, LLC, 502 F. Supp.2d 497 (W.D. Tex. 2005).

Lynne Koscica, who is the daughter of the former president of Su-Tec and a former employee of Su-Tec, now owns Aerco. She was aware of the judgment against Su-Tec in the previous litigation when she negotiated the sale of Su-Tec's assets on behalf of Aerco. Her father negotiated on behalf of Su-Tec. Koscica also reviewed the books and records, knew that Su-Tec was behind on its rent and accounts payable, overdrawn on its checking account, and receiving calls from unpaid creditors. She also was aware that Su-Tec had no accounts receivable, but nevertheless purchased the assets for $88,000.

The purchase price was based upon the amount Su-Tec owed "Three Key Vendors–Great Lakes Pump ($30,000), Bitzer U.S., Inc. ($25,000), and Manufacturing Control Systems ($33,000). (Doc. No. 16, Ex. F at 60-64). The purchase price was not paid to Su-Tec, it was paid to the Three Key Vendors. (Id.) Koscica testified that the Three Key Vendors could not be lost; they were needed to go forward. It is undisputed that Su-Tec was indebted to other vendors at the time it transferred its assets to Aerco, and that Aerco only assumed the obligations owed to the Three Key Vendors.

Based on these facts, Plaintiffs filed a complaint alleging that the transfer violated the Uniform Fraudulent Transfer Act ("UFTA"), Mich. Comp. Laws § 566.31 et seq. They now move for summary judgment.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) authorizes a court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining

whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).  However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

## III.  ANALYSIS

Plaintiffs contend that Su-Tec's transfer to Aerco was fraudulent under the UFTA. Defendants deny liability and also argue the law suit is barred by res judicata.  The merits are discussed below.

### A. Was the transfer fraudulent?

Generally, a creditor may challenge the validity of a transfer from its debtor to a third party by showing that the transfer was fraudulent as to the creditor.  See Mich. Comp. Laws § 566.37.   A creditor may satisfy the statute by showing that its creditor made the transfer with the actual intent to defraud the creditor or that the creditor did not receive reasonably equivalent value for the transfer.  Each basis is discussed below.

#### 1.  Actual intent

"A transfer is fraudulent as to a creditor where the transfer was made with the actual intent to hinder, delay, or defraud the creditor."  See Mich. Comp. Laws § 566.34(1)(a).  The parties dispute whether the factors establish, as a matter of law, that Su-Tec had the actual intent to defraud Plaintiffs.

The statute articulates the following factors as relevant considerations in "determining actual intent under subsection (1)(a):"

> (a) The transfer or obligation was to an insider.

4

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mich. Comp. Laws § 566.34 (1)(a).

Here, the facts of this case support several of the relevant factors. For example, subsection (d) requires examination of the relationship between the transfer and litigation. Here, Plaintiffs had sued Su-Tec before the assets were transferred and had been awarded a judgment. Further, prior to the transfer, Su-Tec was unable to pay its bills, an indicator under subsection (i). Subsection (e) is satisfied because Su-Tec was defunct after the transfer. Finally, the transfer occurred shortly after judgment against Su-Tec was entered, a fact assessed under subsection (j), which favors Plaintiffs.

Even though many factors favor Plaintiffs' position, the issue of intent here, cannot be decided as a matter of law. The cases upon which Plaintiffs rely do not

5

support an award of summary judgment on this basis.  For example, in <u>Coleman-Nichols v. Tixon Corp.</u>, 513 N.W. 2d 441, 449 (Mich. Ct. App. 1994), the court stated, "These badges of fraud are not conclusive evidence, but may be strong or weak depending upon their nature and number occurring in the same case."  Plaintiffs may have presented evidence sufficient to support a strong inference of actual intent to defraud, but the evidence cannot be deemed to eliminate as a matter of law any question of good faith on the part of Su-Tec.

Accordingly, the Court assesses the merits of Plaintiffs' second argument, that they are entitled to summary judgment under subsection (b) of § 566.34.

### 2. Reasonable equivalent value

The parties dispute whether Su-Tec received reasonable equivalent value for its transfer of assets to Aerco.  Section 566.34(1)(b)(i) of the UFTA provides that "a transfer is fraudulent if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," provided the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction."

There is no dispute that Plaintiffs had secured a judgment against Su-Tec that constituted a claim as defined by the UFTA; that Su-Tec is a debtor under the Act; or that its sale of assets to Aerco constituted a transfer.  The issue in dispute is whether Su-Tec transferred the assets identified in the Purchase Agreement and Bill of Sale to Aerco without receiving a reasonably equivalent value in exchange for the transfer.  If it did not receive fair equivalence, the good faith inquiry under subsection (a) is unnecessary and Plaintiffs are entitled to summary judgment.

6

Here, the Court agrees with Plaintiffs that, as a matter of law, Su-Tec did not receive "reasonably equivalent value" for the transfer.  In reaching this finding, the Court finds instructive, the decision in <u>Multi-Grinding, Inc. v. Richardson Sales & Consulting Services, Inc.</u>, No. 245779, 2004 WL 1335813 (Mich. Ct. App. June 15, 2004).  In that case, the court noted that the term reasonably equivalent value was not defined, and considered "all the facts and circumstances in making the reasonably equivalent value determination, keeping in mind that any significant disparity between the value received and obligation assumed by the debtor-transferor will significantly harm innocent creditors." <u>Id.</u> at *4. The court further observed that the "UFTA has been construed to require that the value given in exchange for the transaction be received by and benefit the debtor-transferor, and not some third party or entity." <u>Id.</u> (citing <u>Nat'l Westminster Bank NJ v. Anders Engineering, Inc.</u>, 289 N.J. Super. 602, 606; 674 A.2d 638 (1996)).

Here, Aerco purchased Su-Tec's assets for $88,000, but Su-Tec did not receive any of the purchase price.  It was paid to the Three Key Vendors.  Therefore, Su-Tec received no benefit from the transfer of its assets.  Instead, it transferred its equipment to Aerco:  a transfer that eliminated any possibility of carrying on business; a transfer that eliminated any possible benefit from its ongoing relationship with the Three Key vendors.  Aerco alone benefitted.  Moreover, this transfer left Su-Tec's creditors in a weakened financial position because it depleted Su-Tec of its net worth.

The Court is not persuaded to the contrary by Defendants' reliance on an appraisal prepared on June 10, 2011, showing that Su-Tec's equipment and other property were valued at $31,240 as of January 4, 2010.  Based on this evaluation, Defendants argue that the transfer of assets to Aerco did not leave Su-Tec in a weaker

7

financial position because Su-Tec was insolvent before the transaction, and Aerco paid more than the asserts were worth.

The UFTA requires that value be given in exchange for the transaction to the debtor-transferor, not a third party. Here, in assessing all the facts, the Court concludes as a matter of law, that the transfer violated § 566.34(b)(i). Not only did Su-Tec transfer its assets to a company owned by a former employee--the daughter of its President, it received no financial remuneration. After the transaction, Su-Tec had no remaining assets and its creditors were in a weakened financial position.

### B. Does Res Judicata bar Plaintiffs' claim?

Even if Plaintiffs establish liability under the UFTA, Defendants maintain that the claim is barred under the doctrine of res judicata. The doctrine "is applicable to a second suit involving the same cause of action as that raised in the first suit, and [ ] bar[s] relitigation of issues which actually were or might have been presented before the court in the first action." Senior Accountants, Analysts, and Appraisers Ass'n v. City of Detroit, 231 N.W.2d 479, 481 (Mich. App. 1975).

In the prior lawsuit, Plaintiff requested two separate writs of garnishment against Aerco. Aerco filed its Garnishee Disclosures denying liability, stating that it was not indebted to Su-Tec for any amount; that it did not possess or control Su-Tec's property; and that it was not obligated to make periodic payments to Su-Tec during the relevant time frame.

The application of the doctrine of res judicata to garnishment proceedings is long established. In Ward v. DAIIE, 320 N.W.2d 280, 283 (Mich. Ct. App. 1982) (emphasis added) (citation omitted), the court noted:

> A judgment in favor of a garnishee is conclusive as between the plaintiff and the garnishee in a subsequent action with **respect to the issues involved in the garnishment proceedings**. Thus, it is held that if the garnishee answers denying his indebtedness to the defendant and the plaintiff, failing to file a contest to the answer permits a judgment of discharge of the garnishee to be entered, this is a judgment on the merits and conclusive between the Plaintiff and the garnishee that the latter was not indebted to the defendant.

In this case, res judicata does not bar the claim. Plaintiffs assume that Aerco is not indebted to Su-Tec because their position is that Su-Tec received no value in exchange for the transfer of its assets. Notably, in the prior litigation, Aerco's lawyer argued that "a garnishment proceeding is completely inappropriate to challenge the transfer of property because in a garnishment proceeding, the transfer already has to be declared void. . . ." Uncertified Tr. at 6, 8. The Court adopted that position and dismissed the garnishment without prejudice. The merits of the nature of the conveyance were not litigated, and the doctrine res judicata provides no defense to Aerco.

## IV.  CONCLUSION

For the reasons discussed, Plaintiffs' motion is **GRANTED**.

**IT IS SO ORDERED.**

        s/Marianne O. Battani  
        MARIANNE O. BATTANI  
        UNITED STATES DISTRICT JUDGE

Dated: May 18, 2012

## CERTIFICATE OF SERVICE

Copies of this Opinion and Order were served upon counsel of record on this date by ordinary mail and electronic filing.

        s/Bernadette M. Thebolt  
        Case Manager